UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBRA DUNNIVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02271-SEB-TAB |
| ) | |
| CAMILLE MITCHELL Property Manager, ) | |
| KAREN MITCHELL President, ) | |
| KIRKPATRICK MANAGEMENT CO. ) | |
| Management, ) | |
| GRANDVILLE COOPERATIVE BOARD OF ) | |
| DIRECTORS Board of Directors, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

After Plaintiff's grandson was involved in a shooting that occurred at her federally subsidized apartment, Plaintiff was notified that her lease would be terminated because the incident violated her lease agreement. In this *pro se* filing, Plaintiff attempts to sue various individuals associated with her housing cooperative for violations of the Fourteenth Amendment of the United States Constitution and the Fair Housing Act. Defendants have moved to dismiss the Fourteenth Amendment claim on the grounds that it does not apply to private actors, and the Fair Housing Act claims for their failure to state a basis for legal relief. We address each of these arguments below.

I.     **FACTUAL BACKGROUND**

1

Faced with a Rule 12(b)(6) motion to dismiss, "we recount the facts as alleged in the complaint and the documents described in it, giving [Plaintiff] the benefit of all reasonable inferences in her favor." *Sloan v. American Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018). However, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). We are also not required to "cast a blind eye to 'facts alleged in the complaint that undermine the plaintiff's claim.'" *Gaines v. Guidant Corp.*, 2004 WL 2538374 (S.D. Ind. 2004) (Barker, J.) (quoting *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir. 1993)). Except where explicitly noted, the facts recounted herein are those alleged by Plaintiff's Complaint.

Plaintiff Debra Dunnivan resided at the Grandville Cooperative Apartments ("Grandville"), located in Indianapolis, Indiana, for approximately eight years before the incident at issue occurred. On November 23, 2020, Grandville mailed Plaintiff a thirty-day notice to vacate her apartment due to events on November 16, 2020, when Plaintiff's "guests/grandson was involved in an altercation that ended in gun violence and at least 30 rounds of ammunition were exchanged." Docket No. 1-1, at 1.[1] The notice explained that Plaintiff's "household was involved in a shootout that threatened the life and health, safety, or right to peaceful enjoyment of the premises by other members and non-members." *Id.* The notice also stated that "[m]anagement and witnesses witnessed your guest entering and exiting your apartment with an armed semi-automatic weapon in his

---

[1] This citation is to an exhibit attached to Plaintiff's Complaint, and documents that are attached to the complaint are deemed part of the pleading and may be considered when deciding a motion to dismiss under Rule 12(b)(6). *Geinosky v. City of Chi.*, 675 F.3d 743, 746 n.1 (7th Cir. 2012).

2

hands waiting to retaliate after the shooting." *Id.* This incident was deemed a "serious violation" of Plaintiff's occupancy agreement and Grandville's rules and regulations, which prohibit any family member of a Grandville Member or a guest under a Grandville Member's control from engaging in criminal activity—as determined by the Corporation—regardless of whether the individual is arrested or convicted for such activity. *Id.* If Plaintiff disagreed with this determination, she was informed that she could appeal the denial in writing or request a meeting to dispute the termination within ten days.

   Plaintiff appealed the Cooperative's notice to vacate on November 24, explaining that she was at the store on November 16 when her grandson was "shot outside sitting in a car on the city street." *Id.* at 5. Plaintiff further explained that her grandson was shot six times and that he "was fleeing the vehicle for safety and ran into [her] home to take cover." *Id.* Reportedly, the other occupant of the vehicle ran inside Plaintiff's apartment to call 911 to get assistance for her grandson, "[n]o one returned fire," there are no firearms in her home, and her "grandson does not own a firearm." *Id.* On December 4, Plaintiff received a letter informing her that Grandville's Board of Directors had reviewed her appeal but

3

was upholding management's decision to terminate her lease. Docket No. 20-1, at 2.[2]

Plaintiff stated she "never received a hearing nor any conversation from the defendants."[3]

---

[2] Defendants' Motion to Dismiss stated Plaintiff received a response to her appeal and incorporated and quoted from the letter. "Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997). Defendants "inadvertently failed to attach the December 4, 2020, letter" to the Motion to Dismiss and thus attached it in their reply brief. Docket No. 20, at 4 n.1. The court will consider this letter in ruling on the motion to dismiss because Plaintiff has made the issue central to her claim, and we cannot discern any prejudice from consideration of this exhibit since Plaintiff will have an opportunity to amend her Complaint, and Defendants will be able to move to dismiss with the exhibit attached.

[3] If "an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (citation omitted).

Plaintiff has sued Camille Mitchell, Karen Mitchell, Kirkpatrick Management Co., and Grandville's Board of Directors under the Fair Housing Act of 1968 and the Fourteenth Amendment to the United States Constitution. Plaintiff alleges Defendants "have participated in a pattern and practice of [h]arassing, taunting, discriminating, and threatening African American resident and guests." Docket No. 1, at 5. "The defendnat [sic] created a hostile environment fot [sic] African Americans in Grandville Cooperative Apartments." *Id.* "Defendants practiced nepotism in jobs, Board of Director positions, and placement and selections of aprtments [sic]." *Id.* Plaintiff further alleges that Defendants "harassed, taunted, discriminated, and threatened [her] with eviction and denied access to another partment [sic] while allowing others to do so who were their friends or relatives" because Plaintiff's "sister sued the defendnats [sic] in United States District Court for Fair Housing Act discriminations violations in the Southern District of Indiana." *Id.* Finally, Plaintiff alleges that "Defendants complied with HUD policy and procedures concerning appeals with all other non-African American residents that were sent similar letters from the defendants."[4] *Id.*

## II.  DISCUSSION AND DECISION

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[4] In Plaintiff's response to Defendants' Motion to Dismiss, she filed an "affidavit" that raised new claims and new factual allegations. Giving Plaintiff the benefit of the doubt and construing the affidavit as her responsive briefing, she still cannot raise new claims or facts in such a responsive briefing. If Plaintiff chooses to amend her Complaint, she must include all the facts and claims she intends to pursue in that document—she cannot wait to raise them in response to Defendants.

8(a)(2). Rule 8 has been interpreted to require plaintiffs to plead "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility" of unlawful conduct; the well-pleaded facts of a complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This plausibility requirement still applies to *pro se* litigants such as Plaintiff. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

### A. PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS

At the outset, we note that Plaintiff has failed to plead any violation of the Fourteenth Amendment to the United States Constitution, which "forbids a State from depriving any person 'of life, liberty, or property without due process of law." *Hinman v. Lincoln Towing Serv., Inc.*, 771 F.2d 189, 192 (7th Cir. 1985). Plaintiff has sued no state actors, only private ones, and "the Fourteenth Amendment 'erects no shield against merely private conduct, however discriminatory or wrongful.'" *Id.* (quoting *Shelley v.*

*Kraemer,* 334 U.S. 1, 13 (1948)). Thus, any claims attempted here under the Fourteenth Amendment must be dismissed.

### B.  FAIR HOUSING ACT CLAIMS[5]

Pursuant to federal regulations, landlords that participate in HUD programs must comply with the requirements of the Fair Housing Act—42 U.S.C. 3601, *et. seq. See* 24 C.F.R. § 5.105. The Fair Housing Act is enforceable in federal court by private parties who have been aggrieved by an alleged discriminatory housing practice. 42 U.S.C. § 3613. Potentially applicable here, Section 3604 prohibits discrimination in the rental of HUD housing. 42 U.S.C. § 3604. Specifically, Subsection (a) of this statute makes it unlawful to refuse to "rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Subsection (b) of this statute makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

---

[5] Beyond alleging that Defendant Camille Mitchell authored the notice of termination sent to Plaintiff, and "cited . . . an incident that happened on a city street to a relative of mine on the 16th was a violation of my lease," Plaintiff does not attribute any wrongful actions to any of the named Defendants. Plaintiff's failure to separate her allegations as to each Defendant is itself grounds for dismissal under Rule 8. *See Robbins v. Oklahoma ex rel. Dep't of Hum. Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Because Plaintiff will have the opportunity to amend her complaint, we will address all the pleading deficiencies.

Section 3617 is another potentially available statute to Plaintiff, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" Section 3604 of the Fair Housing Act. 42 U.S.C. § 3617. To prevail on a Section 3617 claim, "a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). The referenced "interference" must be more than an "isolated act of discrimination;" it has to be a "pattern of harassment, invidiously motivated." *Id.*

Evidence of discriminatory intent is a required element of claims under both Sections 3604 and 3617. *Id.* at 784; *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005). Generally, plaintiffs can plead this essential element in one of two ways—by either pleading facts supporting disparate treatment theory, "where a plaintiff must establish that the defendant had a discriminatory intent or motive," or by pleading a disparate impact theory, in which the plaintiff establishes that a defendant's practices "have 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Tex. Dept. of Housing and Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). To allege disparate impact liability, "a plaintiff first must make a prima facie

8

showing of disparate impact." *Id.* at 527. "That is, the plaintiff 'has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.'" *Id.* (quoting 24 C.F.R. § 100.500(c)(1)). To plead this "allegation that a specific, identifiable policy or practice has a discriminatory effect," a plaintiff must sufficiently allege facts to support each of the following:

> (1) That the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;
>
> (2) That the challenged policy or practice has a disproportionately adverse effect on members of a protected class;
>
> (3) That there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;
>
> (4) That the alleged disparity caused by the policy or practice is significant; and
>
> (5) That there is a direct relation between the injury asserted and the injurious conduct alleged.

24 C.F.R. § 100.500(c)(1).

### i. DISCRIMINATION CLAIMS

Plaintiff alleges here that Defendants "have participated in a pattern and practice of Harassing, taunting, discriminating, and threatening African American resident and guests." Docket No. 1, at 5. However, the only "example" she alleges is another conclusory statement that "Defendants complied with HUD policy and procedures concerning appeals with all other non-African American residents that were sent similar

9

letters from the defendants." *Id.* Federal regulations allow a landlord to terminate Plaintiff's lease as a Section 8 recipient for any criminal activity that "threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises)," that "threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises," or any "violent criminal activity on or near the premises by a tenant, household member, or guest, or any such activity on the premises by any other person under the tenant's control." 24 C.F.R. § 982.310. The landlord is authorized to terminate the tenancy for such criminal activity if the landlord "determines that the covered person has engaged in the criminal activity, regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of proof used for a criminal conviction." *Id.* The landlord also "must give the tenant a written notice that specifies the grounds for termination of tenancy during the term of the lease." *Id.* The notice of termination letter attached to Plaintiff's complaint complies with these requirements, and even assuming Plaintiff did not receive Defendants' reply to her appeal, Plaintiff has not directed us to any regulation that such an omission would violate.

 Even if Defendants were found to have violated a HUD regulation or procedure in their reply to her appeal, in her complaint, Plaintiff still has fallen short in alleging "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. Plaintiff's discrimination claims rest entirely on two conclusory statements—that Defendants had a pattern of discrimination

10

against African Americans, and they complied with termination procedures for non-African American residents. As such, her pleading does not satisfy the requirements of Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). *Iqbal*, 556 U.S. at 678. Plaintiff has not alleged any facts regarding: who was sending these allegedly noncompliant termination letters, what other residents received termination letters, what grounds were cited on the basis for the other termination letters, i.e., how similar or dissimilar they were to the legitimate grounds for Plaintiff's termination letter, when these other letters were sent, what occurred during the other appeals processes, and what the results of these other appeals processes were. Moreover, Plaintiff does not plead any facts as to the discriminatory intent of any of the Defendants. In the absence of any allegations regarding the Defendants' intent, Plaintiff still might pursue a disparate impact claim, but she has not pleaded any facts relevant to the five elements required of such a theory, let alone pleaded enough facts to establish a prima facie case. *See* 24 C.F.R. § 100.500(c)(1). Accordingly, any discrimination claim must be dismissed for failure to state a claim, pursuant to the requirements of Rule 8 and Rule 12(b)(6).

### ii. NEPOTISM

Plaintiff also alleges "Defendants practiced nepotism in jobs, Board of Director positions, and placement and selections of aprtments [sic]." Docket No. 1, at 5. "As much as nepotism may smack of unfairness, it is not discrimination and it is not illegal." *Martin v. Queens Cnty. Civ. Ct.*, 2009 WL 3497489 at *16 (E.D.N.Y., Oct. 28, 2009). Accordingly, Plaintiff has not plead any cognizable claim on this theory.

### iii.  HOSTILE ENVIRONMENT

Plaintiff further alleges that Defendants "created a hostile environment [fot] African Americans in Grandville Cooperative Apartments." Docket No. 1, at 5. "Among other things," Sections 3604(b) and 3617 "prohibit discriminatory harassment that unreasonably interferes with the use and enjoyment of a home—by another name, a hostile housing environment." *Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856, 861 (7th Cir. 2018). "A hostile-housing-environment claim requires a plaintiff to show that: (1) she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." *Id.* (citing *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996)). If, like here, Plaintiff has included no allegations about discriminatory intent, a hostile housing environment claim may nonetheless be available based on a disparate impact theory. But again, Plaintiff has not included any facts reflecting the detailed requirements of a disparate impact theory of liability under the Fair Housing Act. Accordingly, to the extent a hostile environment claim was intended, it must be dismissed for failure to state a claim, pursuant to the requirements of Rule 8 and Rule 12(b)(6).

### iv.  RETALIATION

Finally, Plaintiff alleges Defendants "harassed, taunted, discriminated, and threatened [her] with eviction and denied access to another partment [sic] while allowing others to

do so who were their friends or relatives" because Plaintiff's "sister sued the defendnats [sic] in United States District Court for Fair Housing Act discriminations violations in the Southern District of Indiana." Docket No. 1, at 5. A plaintiff may bring a retaliation claim pursuant to § 3617, even if there was no violation under Sections 3604(a) or (b). *Bloch*, 587 F.3d at 781-82. To allege a retaliation claim, Plaintiff must make a prima facie showing that: "(1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel*, 901 F.3d at 868. Here, no such facts have been alleged—nothing regarding when this lawsuit was, what the outcome was of the lawsuit, whether any of the Defendants even knew about the lawsuit, or about Plaintiff's relationship. Plaintiff also has failed to plead any protected activity or that a causal connection between the two existed. "Protected activity can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory housing practices." *Kris v. Dusseault Fam. Revocable Tr.*, --- F. Supp. 3d ---, 2022 WL 867990 (D.N.H. 2022). Plaintiff has also failed to demonstrate the relevance of her sister's experience to her own protected activity. "Like all anti-retaliation provisions, [Section 3617] provides protections not because of who people are, but because of what they do." *Wetzel*, 901 F.3d at 868. Without sufficiently alleging any protected activity, a causal connection between the protected activity and the adverse action cannot arise. Accordingly, Plaintiff's retaliation claim must be dismissed under Rules 8 and 12(b)(6).

### III. CONCLUSION

As it stands, Plaintiff's Complaint does not provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. It provides merely "naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Accordingly, Defendants' Motion to Dismiss [Docket No. 17] is **GRANTED**, and Plaintiff's Complaint [Docket No. 1] is **DISMISSED** without prejudice. Plaintiff is allowed 30 days to seek leave to amend her complaint in conformity with these rulings. Failure to do so shall result in the entry of final judgment with prejudice.

IT IS SO ORDERED.

Date: 8/29/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEBRA DUNNIVAN
2510 Fox Harhour S. Dr
Indianapolis, IN 46203

Michael Carl Mohler
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
michael.mohler@ogletree.com

Scott James Preston
Ogletree Deakins
scott.preston@ogletree.com